BLEICH, J. (Pro Tempore)
It This appeal arises out of the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Peter E. Haley, was convicted by a jury of one count of possession of pornography involving juveniles in violation of La. R.S. 14:81.1. Haley was subsequently sentenced to eight years at hard labor without benefit of parole, probation, or suspension of sentence, with credit for time served, to run concurrent with any other sentences. Haley did not file a motion to reconsider sentence and now appeals his conviction.[1] For the following reasons, Haley’s conviction and sentence are affirmed, and this matter is remanded to the trial court for compliance with the sex offender registration requirements.
FACTS
On August 24, 2011, William Tuggle, supervising agent at the Louisiana Department of Corrections Division of Probation and Parole, received a voicemail message from an anonymous male caller indicating that Haley had been sending inappropriate text messages of a sexual nature to the caller’s mother. The caller indicated that the matter was serious enough that he and his mother were going to seek a restraining order against Haley. Agent Tuggle informed Haley’s parole officer, John Du-pree at the Caddo Parish Sherriff s Office, of the voicemail.[2] Haley was contacted through his employer and asked to meet on the following morning. He arrived at the probation office around 7:00 a.m. on August 25, 2011. Agent Tuggle | ¡.testified that Haley was not under investigation when he arrived but was called simply to discuss the voicemail and determine if the complaint was well founded.
Agent Tuggle and Ofc. Dupree asked Haley about the text messages, and, according to both, Haley admitted he was acquainted with the woman and communicating with her via text messages. However, Haley was evasive about the content of the text messages and did not believe he had messaged anything inappropriate. Agent Tuggle asked to see Haley’s cellphone, and Haley told him that it was in the visor of his truck parked outside the building.[3] Haley provided the keys to his vehicle, and Ofc. Dupree went to retrieve the cellphone while Agent Tuggle continued speaking with Haley. Officer Dupree returned to the office with Haley’s cellphone and laptop computer. He then handed the cellphone to Agent Tuggle and opened the laptop.
At trial, Ofc. Dupree testified that the laptop was in plain view inside Haley’s vehicle and was retrieved by him because laptops can also be used to send messages and text communications. He further testified that Haley voluntarily entered the passcode to allow access to the laptop. Officer Dupree stated that he clicked on the “pictures” icon, which revealed a “por *159 nographic image that appeared to be a juvenile engaged in a sex act.” After seeing a couple of these images, Ofc. Dupree arrested Haley, who was advised of his Miranda rights and handcuffed. According to Ofc. Dupree’s testimony, the pictures on the laptop were observed before any incriminating information was located on the cellphone.
laFollowing Haley’s arrest, the U.S. Marshal’s Service and Bossier City Marshal’s Office were contacted to assist in the investigation. Sergeant Randal Thomas, a deputy marshal at the Bossier City Marshal’s Office Cyber Crimes Unit, advised that a search warrant should be obtained to further search the laptop. The warrant was secured based on the affidavit of Agent Tuggle, which allowed for the dismantling and copying of the laptop’s hard drive. In addition, later in the afternoon on August 25, 2011, a warrantless search of Haley’s residence was conducted to check for other parole violations, and a box of CDs was seized. The CDs were turned over to the Bossier City Marshal’s Office Child Internet Crimes Task Force, and found to contain several images that resembled child pornography.
Haley was charged by bill of information with one count of pornography involving juveniles. Counsel from the Indigent Defender Office was appointed to represent him, and Haley entered a plea of not guilty that same day. Haley filed both pro se and counseled motions to suppress evidence, and both motions were denied. A supplemental counseled motion to suppress was subsequently filed, and also denied following a hearing. The subject of each of the motions was the evidence obtained from Haley’s cellphone and laptop. Haley also filed a motion to exclude the testimony of pediatrician Dr. Margaret Ann Springer, which was denied following a Daubert hearing. Trial commenced on March 16, 2016, |4and the following day, the jury found Haley guilty as charged.[4] Motions for new trial and for post-verdict judgment of acquittal were denied. Haley was sentenced to eight years at hard labor without benefit of parole, probation, or suspension of sentence, with credit for time served, to run concurrent with any other sentence. Haley filed a motion to appeal and the Louisiana Appellate Project was appointed as counsel. This appeal followed.
DISCUSSION
A counseled appeal brief has been filed on Haley’s behalf by the Louisiana Appellate Project, but additionally Haley has filed a supplemental pro se brief submitting seven assignments of error for review.[5]

Motion to Suppress

In one of his assignments of error, Haley challenges the trial court’s denial of his *160 motions to suppress the images obtained from his cellphone and laptop.[6] Haley argues that the seizure of his laptop violated his Fourth Amendment protections, because the officers’ reasonable suspicion of a possible probation violation concerned only text messages on his cellphone. He submits that Ofc. Dupree’s clicking on the “picture’s icon” and looking at photographs on his laptop was outside the scope of any search that would Rhave confirmed the existence of inappropriate sexual text messages on his cellphone. Accordingly, Haley argues that the search of the laptop was illegal and, thus, all evidence seized from that illegal search should have been suppressed. We disagree.
An appellate court reviews the trial court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a de novo review to its findings of law. State v. Monroe, 49,365 (La.App. 2 Cir. 11/19/14), 152 So.3d 1011, 1015. The appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress, and should not overturn a trial court’s ruling unless the trial court’s conclusions are hot supported by the evidence, there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. Id.
An individual on probation does not have the same freedom from governmental intrusion into his affairs as does the ordinary citizen. United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); State v. Malone, 403 So.2d 1234 (La. 1981). While a warrantless search is generally unreasonable, a person on parole or probation has a reduced expectation of privacy under the Fourth Amendment of the U.S. Constitution and under La. Const. art. I, § 5. State v. Angel, 44,924 (La.App. 2 Cir. 01/27/10), 31 So.3d 547. This reduced expectation of privacy allows reasonable warrantless searches of their person and residence by their probation or parole officer. State v. Malone, supra. That reduced expectation of privacy evolves from a probationer’s conviction and agreement to allow a probation officer to investigate his activities in order to confirm compliance with the provisions of his probation. State v. Angel, supra; State v. Drane, 36,230 (La.App. 2 Cir. 09/18/02), 828 So.2d 107, 111, writ denied, 2002-2619 (La. 03/28/03), 840 So.2d 566. This is to further the purposes of probation, rehabilitation of the convicted individual and protection of society and is a standard condition of probation that the probationer allow the probation officer to visit his home at the option of the officer. State v. Malone, supra; State v. Vailes, 664 So.2d 778 (La. App. 2 Cir. 1990).
While the decision to search must be based on something more than a mere hunch, probable cause is not required, and only a reasonable suspicion that criminal activity is occurring is necessary for a probation officer to conduct the warrantless search. State v. Malone, supra, State v. Odom, 34,054 (La.App. 2 Cir. 11/01/00), 772 So.2d 281. However, a probationer is not subject to the unrestrained power of the authorities. State v, Angel, supra. Even though warrantless searches by a probation or parole officer are allowed, a search to which a probationer is subjected may not serve as a subterfuge for a police investigation, but instead, must be conducted when the probation officer believes such a search is necessary in the *161 performance of his duties and must be reasonable in light of the total atmosphere in which it takes place. Id., citing State v. Vailes, supra.
The Louisiana Supreme Court adopted the factors from Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447, 481 (1979), to determine if a warrantless search of a probationer’s home violated the probationer’s constitutional rights. The factors include: (1) the scope of the particular intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and, (4) the place in which it was conducted. State v. Malone, supra at 1239.
17An “electronic textual communication” means a textual communication made through the use of a computer online service, internet service, or any other means of electronic communication. La. R.S. 14:81.3(D); State v. Green, 49,741 (La.App. 2 Cir. 04/15/15), 164 So.3d 331; see State v. Smith, 2015-1359 (La.App. 4 Cir. 04/20/16), 192 So.3d 836 (where communication with victim was reported as “text messages,” but actually occurred over an unidentified social media platform, rather' than mobile text messaging).
Relevant to the instant issue is the paroie agreement signed by Haley in Utah, wherein he agreed to obey all state, federal and municipal laws. He further agreed that he would “permit officers of adult probation and parole to search my person, residence, vehicle, or any other property under my control without a warrant at any time, day or night, upon reasonable suspicion.” The record reveals that in 2005 Haley completed the necessary paperwork to transfer his supervised parole to Louisiana, and the transfer was approved; thus Haley came under the supervision of the Louisiana Department of Corrections. Haley then signed a Louisiana probation and parole agreement, in which he waived his right to the same Fourth Amendment protections afforded other citizens and expressly waived his right to object to warrantless searches of his person, residence and belongings while under supervision. Accordingly, the issue herein- is simply whether there was a reasonable suspicion that Haley was violating his parole such that the search and seizure of his cellphone and laptop was proper.
The evidence presented at the hearings on the motions to suppress established that the officers had reasonable suspicion that Haley may have violated the'terms of his probation by sending inappropriate text messages of |Ra sexual nature making the search and seizure of his céllphone and laptop proper. Notably, the two parole agreements previously signed by Haley clearly state that he specifically agreed to searches of his person, residence, and belongings “for the purpose of ensuring compliance with the conditions of [his] parole.” At the time of the search, Haley voluntarily provided his car keys and assisted Ofc. Dupree in accessing his laptop, thus further consenting to the search. Haley maintains that the forensic analysis of his laptop indicated that no password was needed to gain access. Additionally, the state stipulated that no password was required. A close reading of the testimony makes clear that when the login screen appeared, Ofc. Dupree handed the laptop to Haley, who voluntarily did what was necessary to allow access—thereby consenting to the search of his laptop. However, his consent is not the only consideration since reasonable suspicion was already established, and Haley, as a parolee, had a lower expectation of privacy.
Additionally, Haley left his cellphone and laptop in plain view inside his vehicle. Both, the cellphone and laptop could have been utilized to send inappropriate electronic communications, as the term “text *162 messages” encompasses many different types of textual electronic communications and is not limited to mobile text messaging, The trial court heard arguments twice on this motion and both times concluded that the officers were justified in conducting the search by reasonable manner and within a reasonable scope. Based on this record and the jurisprudence explaining the reduced expectation of privacy of probationers and parolees, the trial court was clearly within its discretion in denying the motion to suppress, and in finding that the officers had reasonable suspicion to search both the cellphone and laptop. This assignment of error is without merit.
| Sufficiency of the Evidence
In his second and fifth assignments of error, Haley submits that the evidence adduced at trial was insufficient to prove he committed the offense of possession of pornography involving juveniles. Haley also urges that due to the program malfunctions during Sgt. Thomas’s analysis of the laptop’s hard drive and cellphone the evidence recovered from the laptop is unfit to support a criminal conviction. Finally, Haley argues that the offensive photos found on his phone were “loaded” onto his phone on August 25, 2011, around 1:01 p.m., while his phone was in the officers’ custody.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La. 05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App. 2 Cir. 01/09/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La. 02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2 Cir. 01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/06/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App. 2 Cir. 02/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913.
An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Speed, 43,786 (La.App. 2 Cir. 01/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/06/09), 21 So.3d 299.
Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2 Cir. 09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La. 03/28/03), 840 So.2d 566 and 2002-2997 (La. 06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d *163 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Baker, 49,175 (La.App. 2 Cir. 08/27/14), 148 So.3d 217. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Ward, 50,872 (La.App. 2 Cir. 11/16/16), 209 So.3d 228.
_JjjAccording to Louisiana law, it is unlawful for a person to possess pornography involving juveniles. La. R.S. 14:81.1(A)(1). “Pornography involving juveniles” is any photograph, videotape, film, or other reproduction, whether electronic or otherwise, of any sexual performance involving a child under the age of seventeen. La. R.S. 14:81.1(B)(7).
On appeal, Haley argues that the evidence used to convict him was altered or fabricated. During the trial, Sgt. Thomas testified to establish the chain of custody of the cellphone and laptop recovered by Ofc. Dupree from Haley’s vehicle. A copy of Sgt. Thomas’s training and qualifications in computer forensics was entered into evidence along with his report and copies of the forensic data he recovered from Haley’s cellphone and laptop. During his testimony, Sgt. Thomas explained the process of analyzing confiscated electronics and showed a photograph to the jury of each step of this process taken during the analysis of Haley’s laptop. However, he did explain how the programs he uses to ensure electronic information is not altered, which include write-blocker and Cellebrite, sometimes malfunction or become outdated as technology progresses. He further explained the process he must then go through to accommodate for those instances when newer cellphones, like Haley’s cellphone was at the time of the investigation, are capable of holding more data than the Cellebrite program can process at one time.
Sergeant Thomas testified that some of the images recovered from Haley’s laptop and cellphone appeared to be pornography involving a juvenile. The jury was removed from the courtroom several times during the trial in order to accommodate Haley’s objections and claims that he had not previously viewed the images the state was attempting to enter into | ^evidence. Haley expressed concern that the browser history report showed that pornography websites were accessed while the phone was in officer custody. The report entered into evidence containing Haley’s web browser history from his cellphone does appear to show that some websites were visited while Sgt. Thomas was analyzing the cellphone. During his testimony, Sgt. Thomas explained that sometimes this can happen when he is attempting to extract data from a phone.
The record also indicates that Haley questioned Sgt. Thomas about the first page of an incomplete Cellebrite report which showed the program failed. Sergeant Thomas explained that the report page in question was from a Cellebrite report he tried to run, but could not finish, and he stated, “That’s one thing that is not great about Cellebrite, that if you see right here it says: Skip due to failure. So on here it shows that there were two failures. In order to get the full data for me to do anything with it the report has to finish.” Haley then asked Sgt. Thomas if the report ever finished, and he responded, “once I got back to the lab, and I tried different things.”
The fact finder, in this case the jury, must weigh the credibility of the witnesses when no contradiction exists between the direct evidence presented and the testimo *164 ny of the witness. Here, Sgt. Thomas explained why these program failures occurred. Haley attempted to use the failed program printouts to show that evidence must have been fabricated. However, it was for the jury to determine if it was more probable that the inconsistencies in the reports existed, because, as Sgt. Thomas explained, it sometimes takes a couple of attempts to get information off of an electronic device.
| iaIn this matter, the evidence was sufficient to sustain the .conviction for possession of pornography involving a juvenile. The evidence indicated several attempts were made by Sgt. Thomas to recover the information from Haley’s cellphone and laptop,, but he was eventually successful in retrieving the images. The jury’s finding that Haley was in possession of child pornography was not unreasonable based on the direct evidence presented. This assignment of error is without merit.

Daubert Challenge

In Haley’s second counseled assignment of error, he asserts that the testimony, of the state’s expert, Dr. Springer, failed to meet the reliability standard set forth in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Haley argues that the trial court erred in allowing Dr. Springer’s opinion because of her reliance on the Tanner stages in her analysis of the photographs in this case.[7] We disagree.
Louisiana C.E. art. 702 provides that'a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (1) the expert’s scientific, technical, or other' specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and, (4) the expert has reliably applied the principles and methods to the facts of the case, Pratt v. Culpepper, 49,627 (La.App. 2 Cir. 02/27/15), 162 So.3d 616. Before an expert’s testimony is admitted, the trial court is required to perform a “gatekeeping” function to “ensure that any and all scientific testimony or evidence admitted is, not only relevant, but reliable.” Pratt v. Culpepper, supra, citing Daubert, supra.
This “gatekeeping” obligation applies not only to “scientific” testimony, but to all expert testimony. Pratt v. Culpepper, supra, citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Daubert nonexclusive list of factors by which to assess the reliability of an expert’s opinion include: (1) the “testability” of the scientific theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and, (4) whether the methodology is" generally accepted in the scientific community. Pratt, supra at 626.
In Cheairs v. State ex rel. Dep’t of Transp. & Dev., 2003-0680 (La. 12/03/03), 861 So.2d 536, the Louisiana Supreme Court further specified that admission of expert testimony is proper only if all three of the following things are true: (1) the expert is qualified to testify competently regarding the matters he intends to ad *165 dress; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and, (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Cheairs, supra at 542.
| ifiLouisiana R.S. 14:81.1(G) provides as follows:
In prosecutions for violations of this Section, the trier of fact may determine, utilizing the following factors, whether or not the person displayed or depicted in any photograph, videotape, film, or other video reproduction introduced in evidence was under the age of seventeen years at the time of filming or recording:
(1) The general body growth, bone structure, and bone development of the person.
(2) The development of pubic or body hair on the person.
(3) The development of the person’s sexual organs.
(4) The context in which the person is placed or the age attributed to the person in any accompanying video, printed, or text material.
(5) Available expert testimony and opinion as to the chronological age or degree of physical or mental maturity or development of the person.
(6) Such other information, factors, and evidence available to the trier of fact which the court determines is probative and reasonably reliable.
During the Daubert hearing, Dr. Springer testified that she'is a pediatrician at the clinical facility at Louisiana State University Hospital in Shreveport and has worked in pediatrics since 1991. Dr. Springer prepared a report in September 2012 after being presented with seven photographs provided to her by the Caddo Parish District Attorney’s office. In her report she specifically discussed three of the photographs: the first was described as an Asian female with a. sexual maturity level of Tanner II or III based on the size and contour of the developing female breasts; the second was described as depicting an erect male penis entering the vulva of a female child; and, the third was described as showing another female with breast development comparable to Tanner stages II to III. During the hearing, referencing the 11f,second photograph described (labeled picture 5), Dr. Springer was questioned:
Q: In your determination that is a female child, that wouldn’t actually have anything to do with the Tanner scale; is that correct?
A: No, sir. This is just what a baby girl looks like.
Q: So it’s just based off your expertise in pediatric medicine?
A: Yes, sir..
Dr. Springer stated she analyzed the photographs. at issue, in part, by applying the Tanner stages, which she explained are sexual maturity scales widely recognized as- a tool for determining normal growth patterns in children and adolescents. She further testified that the Tanner stages were devised by a British physician in the 1980s to aid in preventive medicine in pediatrics by statistical analysis of large numbers of children whose development was assessed, norms were determined, and a bell-shaped curve delineated the average development within an approximate age range. Dr. Springer went into great depth describing the five levels of Tanner stages in female development, with the first stage ending at the beginning of breast development and visible signs of puberty, which is considered Tanner II. She explained that growth rates vary based on nutrition,. social considerations, and ethnicity, but in *166 the United States, female adolescents reach Tanner II between the ages of 9 to 13. According to Dr. Springer, Tanner III covers basically ages 13 to 14, and Tanner IV is the last stage before mature female, usually marked by the beginning of menstruation and the outer signs of puberty as the body becomes ready for childbearing, denoting Tanner V, the mature female stage.
| i7Pr. Springer clarified that the Tanner stages could not be used to pinpoint the specific chronological age of a female adolescent, but served to aid in the determination of a possible age range for a specific child based on identifiable signs of development. She also stated that she was unaware of any exact test regarding Asian females specifically. At the conclusion of the Daubert hearing, the trial court ruled that the methodology used by Dr. Springer to reach her conclusions—ie., the Tanner stages and her years of experience examining children—met the acceptable standard for reliability.
During the jury trial, Dr. Springer was accepted as an expert in pediatric medicine with no objection from Haley. She testified that, in addition to consulting the Tanner stages, she used “my expert knowledge of the way children grow and develop into teenagers and into adults” to arrive at her opinion that at least two of the photographs were images of children or adolescents and, thus, depicted child pornography. Dr. Springer was candid in her testimony, stating that she could not make an opinion as to the other five photographs due to various factors. However, she was clear that one of the photographs depicted a post-pubescent male penis, with pubic hair, and an open vulva of a child of less than school age based on the stage of development of the female genitalia. In another photograph, Dr. Springer noted that the young female was only as tall as the male’s waist and was “an elementary schooler probably.” In her trial testimony regarding these two photographs, Dr. Springer did not specifically reference the Tanner stages and was simply testifying from her vast experience in viewing and evaluating growing children.
Haley’s sole argument regarding this assignment of error is that the Tanner stages, one of the tools utilized by Dr. Springer in reaching her | ^conclusion regarding the sexual maturity, or lack thereof, of the girls in the images was unreliable under Daubert. Dr. Springer was admitted as an expert; therefore, it is permissible for her to given an opinion based on her own knowledge and experience. She described the Tanner stages as an “aid” devised by accumulated statistics in child development. Further, in accordance with La. R.S. 14:81.1(G), the jury is permitted to make determinations based on its own knowledge of the general development of sexual organs and body growth whether a juvenile under the age of 17 is depicted in the images in question. Nothing in the record shows that Dr. Springer based her opinion solely on the Tanner stages; therefore, Haley’s argument that the Tanner stages are not to be used for age determination in a criminal court is without merit. The trial court did not commit reversible error in concluding that Dr. Springer’s expert testimony met the reliability standard for admissibility in this matter.

Spoliation and Tampering with Evidence

 In the first pro se assignment of error, Haley argues that Agent Tuggle either fabricated or spoliated evidence by not retaining a recording of the voicemail in which the caller complained of the inappropriate text messages that spawned this investigation.
Spoliation of evidence occurs when a litigant destroys, conceals or fails *167 to produce evidence within his or her control. Grantham v. Eldorado Resort Casino Shreveport, 49,474 (La.App. 2 Cir. 11/19/14), 152 So.3d 1028, writ denied, 2014-2654 (La. 03/06/15), 160 So.3d 1290. This gives rise to an adverse presumption that had the evidence been produced, it would have been unfavorable to the litigant. Id.; Rodriguez v. Northwestern Nat’l Ins. Co., 358 So.2d 1237 (La. 1978); Acadian Gas Pipeline Sys. v. Nunley, 46,648 (La.App. 2 Cir. 11/02/11), 77 So.3d 457, writ denied, 2011-2680 (La. 02/10/12), 80 So.3d 487. The law is settled, however, that when the failure to produce the evidence is adequately explained, the presumption does not apply. Id.
Agent Tuggle testified that there was no recording made of the anonymous voice-mail message. Haley has failed to show that Agent Tuggle intentionally destroyed evidence. Further, Agent Tuggle provided a reasonable and adequate explanation as to why the voicemail was not recorded: the department of probation and parole gets numerous phone calls daily, and the officers do not routinely record them. Therefore, an adequate explanation was given as to why the voicemail message was not produced, and, as a result, there was no presumption in Haley’s favor.

Voir Dire

Following supplementation of the record with the jury voir dire, Haley’s appellate counsel filed a supplemental brief arguing that the trial court erred in denying challenges for cause as to two jurors: Jordan E. Young, who was a child victim of a sex offense, and Holly Fleming, who Haley claims exhibited a bias in child pornography cases. Haley’s pro se brief also sets forth assignments of error that appear to be connected to the voir dire process; namely, he questions whether the trial judge can speak to jurors and that one of the jurors should have been dismissed because of a bias concerning prior sexual abuse. We disagree with these arguments.
Louisiana Const. art. I, § 17(A) guarantees a defendant the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. Both the defendant and the state are given 12 peremptory challenges in trials of offenses punishable by death or necessarily by | apimprisonment at hard labor. La. C. Cr. P. art. 799. In addition to his constitutionally guaranteed peremptory challenges, a defendant may challenge a juror for cause on several grounds set forth in La. C. Cr. P. art. 797, which include, inter alia:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict; or
(4) The juror will not accept the law as given to him by the court.
In a challenge for cause, the challenging party has the burden of showing that a prospective juror should be excluded based on one or more of the grounds in La. C. Cr. P. art. 797. State v. Hampton, 50,561 (La.App. 2 Cir. 05/18/16), 195 So.3d 548, 557. When a defendant must utilize a peremptory challenge to correct an error in denying a challenge for cause and thereafter exercises all available peremptory challenges on other prospective jurors, a substantial right of the defendant, guaranteed by the Louisiana Con *168 stitution, is affected. Id.; see also State v. Monroe, 366 So.2d 1345 (La. 1978). In such instances, prejudice is presumed and automatic reversal of the conviction results. Id. citing State v. Campbell, 2006-0286 (La. 05/21/08), 983 So.2d 810, cert. denied, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008). To warrant a reversal of a conviction and sentence, the defendant need only show: (1) the trial court erred in refusing to sustain a challenge for cause; and, (2) the defendant exhausted all of his peremptory challenges. La. C. Cr. P. art. 800; State v. Mickelson, 2012-2539 (La. 09/03/14), 149 So.3d 178.
A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Tucker, 2013-1631 (La. 09/01/15), 181 So.3d 590, cert. denied, - U.S. -, 136 S.Ct. 1801, 195 L.Ed.2d 774 (2016), reh’g denied, - U.S. -, 137 S.Ct. 16, 195 L.Ed.2d 888 (2016). A trial court’s evaluation of the attributes required to qualify a prospective juror is entitled to great weight; accordingly, his exercise of the wide discretion that determination requires will not be set aside unless it is arbitrary and unreasonable. State v. Hampton, supra. A trial court’s refusal to disqualify a prospective juror is not an abuse of discretion or a reversible error if the perceived bias or impartiality of the prospective juror is properly remedied through rehabilitation. State v. Mickelson, supra. A prospective juror can be rehabilitated if the court is satisfied that the juror can render an impartial verdict according to the evidence and instructions given by the court. State v. Hampton, supra.

Challenged Juror No. 1: Jordan Young

During general questioning, Young indicated that she had been a victim of a sexually related crime. During individual voir dire, Young informed the court that when she was “little” she was molested and was unsure of what happened legally to her abuser. Despite her experience, Young advised the court that it would not keep her from being fair, and she agreed that she could afford Haley the presumption of innocence. In denying Haley’s challenge for cause to Young, the trial court explained:
122The court does believe in the totality of her answers, I really think Ms. Young can be fair and impartial. I think that she was very matter of fact about having been the victim of an assault. She did not describe it as involving a pornographic recording of her or anything like that. And she showed really no inappropriate, profound or significant emotional response. She seemed very sincere that she can be fair. There’s simply nothing in her answers, the text or the words that she said that would make me believe she’s impartial (sic), and there was nothing in her demeanor that makes me think that she was being anything other than frank with the court, with the lawyers and with Mr. Haley. So while I can understand some concern I do not see any grounds to excuse Ms. Young for cause.
The individual voir dire transcript reveals a thoughtful and thorough questioning of Young by the trial court; thus denial of Haley’s challenge was clearly not arbitrary or unreasonable. The trial court was in the best position to view Young’s demeanor and tone while evaluating the potential for concern due to her childhood experience. Further, the trial court found no indication that Young was biased, impartial, or unwilling to be a fair juror. The transcript wholly supports the trial court’s ruling.

*169
Challenged Juror No. 2: Holly Fleming

During questioning, Fleming advised the court that a high school friend was sexually victimized by a teacher who was later found not guilty. The trial court noted familiarity with the case that Fleming was referencing as one involving a high school coach allegedly having inappropriate sexual relations with students. Fleming stated that pornography depicting children is “sensitive and highly offensive material” to her.' The trial judge questioned Fleming as follows:
The Court: [D]o you think that you could separate however traumatic that experience may have been having a friend go through that, do you think that you could set aside that experience and focus on the evidence that you heard in this case as a juror?
Fleming: Yes.
| aaThe Court: Because I was a little concerned. You said based on that experience ... you said you couldn’t be fair because of that experience.
Fleming: Yes, I • did say that. And I guess it’s because even though they’re different, it seems like they’re different situations, it really boils down to me, power, using that power of adult/child. And that’s where I may have a problem where it gets blurry.
The Court: If I told you that, one, you would need to set aside that past experience, but two, that the State’s burden in this case is to prove again beyond a reasonable doubt simply the possession, not necessarily the manufacture, but the possession of something that they allege is pornography involving juveniles, could you force them to prove to you before you’d be willing to consider a guilty verdict that it was a knowing and intentional possession and that the materials were, in fact, pornography involving juveniles? In other words, what you’re telling me sounds like something that would be an issue in a case involving an allegation of creating or manufacturing that type of material as opposed to an issue of possession.
Fleming: I see, yes.
In denying the challenge for cause to Fleming, the trial court relied on her supplemental responses to questioning that indicated that she was fully capable of setting aside her' experience and focusing on the evidence presented at trial. The trial court noted Fleming’s calm demeanor and stated it heard nothing that indicated Fleming could not be a fair and impartial juror. Based on the totality of her answers, we find the trial court did not manifestly error in its ruling.
After a complete review of the supplemental transcript containing the jury voir dire, we find the trial court did not abuse its discretion in denying the challenges for cause to jurors Young and Fleming. Thus, these assignments of error are without merit.
| ^Closing arguments and the failure to transcribe
Haley has also complained that the district attorney made comments during closing arguments that were intended to “elicit an emotional response from the jury to attain a guilty verdict.” Specifically, Haley submits that the district attorney used Dr. Springer’s opinion as “fact” in the closing argument and referred to the “picture of that baby 15 to. 20 times” to evoke emotion in the jurors. He argues that it was improper for the district attorney to appeal to the conscious of the jury in closing argument. We, disagree.
The district attorney is afforded considerable latitude in making argument to the jury. State v. Wilson, 50,589 (La.App. 2 Cir. 05/18/16), 196 So.3d 614, 624. Further, a trial court has broad dis *170 cretion in controlling the scope of closing arguments. Id., citing State v. Casey, 1999-0023 (La. 01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Even in the case of a prosecutor exceeding the bounds of proper argument, a reviewing court will not reverse a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict. Id.
The appellant must request transcription of that portion of proceedings necessary for review in light of the assignments of error to be urged or the issues are not renewable on appellate review. State v. Mims, 524 So.2d 526 (La. App. 2 Cir. 1988), writs denied, 531 So.2d 267 (La. 1988) and 569 So.2d 970 (La. 1990).
The record on appeal does not contain the transcript of the closing argument in question. By order of the First Judicial District judges, opening and closing arguments are not included in the record for appeal purposes, and Haley failed to request transcription of those arguments. However, |2HHaley refers to the emphasis placed on Dr. Springer’s testimony by the state in its closing argument and to statements he believes were intended to mislead the jury. It is assumed these allegations are based on his memory of the closing argument as those arguments have not been made a part of this record. Accordingly, this issue was not preserved for review.
ERRORS PATENT
The record reveals two errors patent. First, the trial court failed to provide Haley with verbal or written notice of his obligation to register as a sex offender. The defendant’s conviction for pornography involving juveniles is a sex offense as defined by La. R.S. 15:541 and therefore carries the requirements of sex offender notification and registration under La. R.S. 15:542 and 15:543. This record does not show that the trial court provided Haley with the forms or oral advice to which he is entitled.[8] The matter is remanded solely for the purpose of compliance with these statutes. See State v. Hough, 47,308 (La. App. 2 Cir. 08/01/12), 103 So.3d 477, writ denied, 2012-1936 (La. 03/08/13), 109 So.3d 357.
Second, the penalty provision of La. R.S. 14:81.1, in effect in 2012, provided for a mandatory fine of not more than $10,000.00. Although the trial court’s failure to impose a mandatory fíne results in an illegally lenient sentence, this Court is not required to remand for imposition of a mandatory fine. State v. Dock, 49,784 (La. App. 2 Cir. 06/03/15), 167 So.3d 1097. The state has not urged the error, and Haley is not prejudiced by the trial court’s failure to impose the fine.
^CONCLUSION
For the reasons herein, the conviction and sentence of Peter E. Haley are affirmed. The case is remanded for the trial court to provide appropriate written notice to the defendant of all sex offender registration requirements and for a minute entry confirming that proceeding.
AFFIRMED AND REMANDED.
APPLICATION FOR REHEARING
Before BROWN, MOORE, GARRETT, STONE and BLEICH, JJ.
Rehearing denied.

. In accordance with La. C. Cr. P. 881.1(E), failure to make a motion to reconsider sentence shall preclude the defendant from raising an objection to the sentence on appeal; thus, Haley is precluded from appealing his sentence here.

. At the time these events took place, Haley was on parole from convictions in the State of Utah for first degree rape and first degree forcible sodomy involving a juvenile.

. It is probation office policy for offenders to leave cellphones in their vehicles during office visits.

. Haley represented himself at trial with stand-by counsel, and he has raised no issue concerning his self-representation. Both the Louisiana and federal constitutions guarantee a criminal defendant's right to the assistance of counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Campbell, 2006-0286 (La. 05/21/08), 983 So.2d 810, cert. denied, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008); State v. Brooks, 452 So.2d 149 (La. 1984). A defendant may elect to represent himself if the choice is knowingly and intelligently made and the assertion of the right is clear and unequivocal. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); State v. Yates, 44,391 (La.App. 2 Cir. 07/01/09), 15 So.3d 1260.

. In his final assignment of error, Haley argues that the trial court erred by speaking to jurors during deliberation but has not briefed or explained this assignment; thus it is incomplete and considered abandoned. URCA Rule 2-12.4(B)(4).

. Haley sought supervisory review of the denial of his motion to suppress and this Court denied writs in No. 49,089-KW.

. Use of the Tanner scale, developed by British pediatrician Dr. James Tanner in the 1980s", is acceptable in formulating an expert opinion as to the age of a child, as long as it is only one of a number of factors taken into account when reaching the expert opinion. See U. S. v. Pollard, 128 F.Supp.2d 1104, 1123 (E.D. Tenn. 2001); Henry F. Fradella, et al., The Impact of Daubert on Forensic Science, 31 Pepp. L. Rev. 323, 344 (2004).

. This Court affirmed Haley’s previous conviction and sentence for failure to register as a sex offender in State v. Haley, 50,022 (La. App. 2 Cir. 06/24/15), 169 So.3d 804.