# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 KA 1193

## STATE OF LOUISIANA

## VERSUS

## RANDALL K. STURDIVANT

*Judgment Rendered:* SEP 2 6 2024

********

**Appealed from the**
**22nd Judicial District Court**
**In and for the Parish of St. Tammany**
**State of Louisiana**
**Case No. 0110-F-2022**

**The Honorable William H. Burris, Judge Presiding**

********

| | |
|---|---|
| J. Collin Sims<br>District Attorney<br>Matthew Caplan<br>Butch Wilson<br>Assistant District Attorneys<br>Covington, Louisiana | Counsel for Appellee<br>State of Louisiana |
| | |
| Jane L. Beebe<br>Addis, Louisiana | Counsel for Defendant/Appellant<br>Randall K. Sturdivant |

********

## BEFORE: McCLENDON, WELCH, AND LANIER, JJ.

*Welch J. concurs without reasons*

**LANIER, J.**

The defendant, Randall K. Sturdivant, was charged by bill of information with twelve counts of possession of pornography involving juveniles under the age of thirteen years, violations of La. R.S. 14:81.1(A), (E)(1)(a), and (E)(5)(a). He pled not guilty and, after a trial by jury, he was found guilty as charged on each count. The trial court denied the defendant's motion for post-verdict judgment of acquittal and motion for new trial and sentenced him to forty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence, on each count, to be served concurrently. The trial court denied the defendant's motion to reconsider sentence. The defendant now appeals, assigning error to the admission of expert testimony, the constitutionality of the sentences, and the trial court's failure to observe a twenty-four-hour delay before imposing the sentences. For the following reasons, we affirm the convictions, vacate the sentences, and remand for resentencing.

**STATEMENT OF FACTS**

On November 15, 2021, Agent Steve Everly, a probation and parole supervisor of the Department of Public Safety and Corrections (DPSC) assigned to monitor the defendant upon his release from prison for a prior offense,[1] conducted a field visit at the defendant's residence in Lacombe. In performing a routine check of the defendant's cell phone, Agent Everly discovered several videos of a sexual nature, involving suspected prepubescent females. Agent Everly placed the defendant under arrest, confiscated his cell phone, and turned it over to Special Agent April Lucia of the Louisiana Bureau of Investigations (LBI). Special Agent Lucia confirmed that twelve of the video files on the defendant's cell phone

---

[1] The defendant was being supervised upon release as a prior sex offender and, as a condition of his release, was not allowed to possess any form of pornography. On the day at issue, Agent Everly was supervising the defendant's girlfriend as well, who was also a sex offender and living with the defendant at the time.

2

involved children under thirteen years of age. She also conducted a pretrial interview of the defendant in which he confessed to possessing child pornography.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the defendant argues the trial court erred in allowing Special Agent Lucia to testify as an expert in a new area of expertise, Internet Crimes Against Children (ICAC) investigations. He argues the error was "so egregious as to call into question the validity of the jury verdict."

Preliminary questions concerning the competency or qualification of a person to be a witness or the admissibility of evidence shall be determined by the trial court. La. Code Evid. art. 104(A). A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. La. Code Evid. art. 702. Notably, the Louisiana Supreme Court has placed limitations on this codal provision in that, "expert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of men." **State v. Stucke**, 419 So.2d 939, 945 (La. 1982).

Expert testimony, as generally with other evidence, is subject to the balancing test of La. Code Evid. art. 403. See Comment (f) to Article 702. Relevant evidence is evidence which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. Code Evid. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence that is not relevant is not admissible. See La. Code Evid. art. 402. Relevant

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. La. Code Evid. art. 403.

Generally, the test of competency of an expert is the expert's knowledge of the subject about which he is called upon to express an opinion. A combination of specialized training, work experience, and practical application of the expert's knowledge can combine to demonstrate that the person is an expert; a person may qualify as an expert based upon experience alone. Once an expert has been found qualified, the trier of fact is entitled to assess credibility and accept or reject the opinion of the expert in light of the expert's qualifications and the facts that form the basis of his or her opinion. The trial court is vested with wide discretion in determining the competence of an expert witness, and its ruling on the qualification of the witness will not be disturbed absent an abuse of discretion. **State v. Lutz**, 2017-0425 (La. App. 1 Cir. 11/1/17), 235 So.3d 1114, 1132, writ denied, 2017-2011 (La. 8/31/18), 251 So.3d 411; see also Comment (d) to Article 702 ("Broad discretion should be accorded the trial judge in his determination as to whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert.").

In **State v. Foret**, 628 So.2d 1116, 1123 (La. 1993), the Louisiana Supreme Court adopted the test set forth in **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 592-593, 113 S.Ct. 2786, 2796-2697, 125 L.Ed.2d 469 (1993), regarding proper standards for the admissibility of expert testimony. Under the adopted standard, the trial court is required to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. **State v. Chauvin**, 2002-1188 (La. 5/20/03), 846 So.2d 697, 700-701. To assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can

properly be applied to the facts at issue, the Louisiana Supreme Court suggested the following general observations set forth in **Daubert** are appropriate: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the methodology is generally accepted by the relevant scientific community. See **Chauvin**, 846 So.2d at 701.

Thus, Louisiana has adopted **Daubert's** requirement that in order for technical or scientific expert testimony to be admissible under Article 702, the scientific evidence must rise to a threshold level of reliability. **Chauvin**, 846 So.2d at 701; **Foret**, 628 So.2d at 1123. **Daubert's** general "gatekeeping" applies not only to testimony based upon scientific knowledge, but also to testimony based on "technical" and "other specialized knowledge." **Kumho Tire Co., Ltd. v. Carmichael**, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999); **Independent Fire Ins. Co. v. Sunbeam Corp.**, 99-2181 (La. 2/29/00), 755 So.2d 226, 234. The trial court may consider one or more of the four **Daubert** factors, but that list of factors neither necessarily nor exclusively applies to all experts or in every case. **Kumho Tire**, 526 U.S. at 141, 119 S.Ct. at 1171. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determinations. *Id.*, 526 U.S. at 142, 119 S.Ct. at 1171.

Herein, the State moved to qualify Special Agent Lucia as an expert witness in the field of "investigations into [i]nternet crimes against children." Defense counsel traversed and then entered an objection, arguing that Special Agent Lucia did not qualify as an expert based on her field of study, as she had never published articles or previously qualified as an expert. Prior to the State's motion to offer her as an expert, Special Agent Lucia testified that she was assigned to the Cyber Crime Unit in the attorney general's office of the LBI. According to her testimony,

5

her primary responsibility as a special agent was to initiate investigations of cyber tips from the National Center for Missing and Exploited Children and to report the possession, distribution, or trading of sexual abuse images. She testified her duties further included conducting undercover operations to uncover and investigate people in their jurisdiction who had a sexual interest in children. Special Agent Lucia noted that she had several years of experience as a licensed practical nurse,[2] earned a bachelor's degree in sociology and criminal justice, and earned a master's degree in applied criminology, focusing on sex offender behavior.

Special Agent Lucia's career in law enforcement began with the DPSC, Division of Probation and Parole, as a supervisor of sex offenders, preparing presentence investigation reports. From there, she joined the Louisiana Attorney's General's Office in 2016, where she initially received thirty to forty hours of intensive training in investigating crimes against children, operating forensic computer programs, and interviewing sex offenders. She attends annual training conferences on child exploitation and crimes against children and is certified to conduct forensic interviews of sexually abused children.

Special Agent Lucia's additional experience included teaching criminal justice and sociology, and providing state-wide ICAC training, including an eight-hour segment called ICAC 101, for sheriff's offices, police departments, and district attorney's offices. Outside of her own investigative cases, she confirmed that she had not conducted research studies or published any articles, though she reviewed research projects and publications as a part of her training. At the time of the trial, Special Agent Lucia had been involved in more than 1500 investigations, primarily involving child exploitation.

After defense counsel's traversal and a brief rebuttal by the State, the trial court ruled that Special Agent Lucia, as an ICAC investigator, was qualified to

---

[2] Special Agent Lucia confirmed that her nursing background includes training in anatomy.

testify as an expert witness. Subsequently, Special Agent Lucia testified that of the videos retrieved from the defendant's cell phone, she was able to identify twelve that contained prepubescent child abuse material and classified two others as "age difficult." She identified slight breast development, pubic hair, and hips beginning to develop as indicators for the "age difficult" classifications.

In challenging the trial court's ruling, on appeal, the defendant notes that Special Agent Lucia had never been qualified as an expert before, there was no **Daubert** hearing, her area of expertise was new, and she lacked participation in research studies or publications. We note that the State, attaching a full resume of education, employment history, and a curriculum vitae, filed pretrial notice of its intent to call Special Agent Lucia as an expert in the field of ICAC investigations, to present testimony on topics including methodology of identifying child sexual assault materials. However, there is no indication in the record the defendant requested a **Daubert** hearing. Further, the defendant did not assert the lack of a **Daubert** hearing as grounds for his objection to Special Agent Lucia testifying as an expert, nor did he raise questions regarding methodology or reliability, instead only objecting on the grounds of her qualifications.

The purpose of a **Daubert** hearing is to determine the reliability of an expert's methodology, not whether the expert has the proper qualifications to testify. **State v. Lamonica**, 2009-1366 (La. App. 1 Cir. 7/29/10), 44 So.3d 895, 901, <u>writ denied</u>, 2010-2135 (La. 2/18/11), 57 So.3d 331. It is the responsibility of the opposing party to explore the factual basis for the opinion and thus, determine its reliability. **Leard v. Schenker**, 2006-1116 (La. 6/16/06), 931 So.2d 355, 357. When the objecting party fails to request an evidentiary "gatekeeping" hearing under the rationale of **Daubert**, his objections to the admissibility of an expert witness's testimony under **Daubert** are not preserved for appeal. **Harris v. State ex rel. Dept. of Transp. and Development**, 2007-1566 (La. App. 1 Cir.

7

11/10/08), 997 So.2d 849, 868, writ denied, 2008-2886 (La. 2/6/09), 999 So.2d 785. Accordingly, the defendant's failure to move for a **Daubert** hearing or object on the grounds of a lack thereof results in a waiver of those issues on appeal. See **State v. Lofton**, 2008-0747 (La. App. 1 Cir. 9/12/08), 2008 WL 4190572, \*3, (unpublished), writ denied, 2008-2661 (La. 5/22/09), 9 So.3d 140; see also La. Code Evid. art. 103(A)(1); La. Code Crim. P. art. 841.

Moreover, given Special Agent Lucia's education, training, and experience in investigating crimes against children, we find the trial court did not abuse its discretion in qualifying her as an expert witness and allowing her to testify on the evidence at issue at trial. Under Article 702, Special Agent Lucia's specialized knowledge and experience was sufficient to qualify her to testify as an expert in the tendered field. Furthermore, the defendant's claim that the testimony at issue involves a new area of expertise is at odds with governing jurisprudence and statutory authority.

Specifically, in accordance with La. R.S. 14:81.1(G), to determine the age of an individual depicted in an image, the trier of fact may consider: (1) the general body growth, bone structure, and bone development of the person; (2) the development of pubic or body hair on the person; (3) the development of the person's sexual organs; (4) the context in which the person is placed or the age attributed to the person in any accompanying video, printed, or text material; (5) *available expert testimony and opinion as to the chronological age or degree of physical or mental maturity or development of the person*; and (6) such other information, factors, and evidence available to the trier of fact that the court determines is probative and reasonably reliable. (Emphasis added). Further, in cases similar to the instant case, convictions have been upheld when the trial court admitted testimony by qualified experts regarding the physical developmental characteristic(s) that led to a conclusion regarding the age of a person depicted in

8

evidence. See **State v. Haley**, 51,256 (La. App. 2 Cir. 5/24/17), 222 So.3d 153, 165-166, writ denied, 2017-1230 (La. 4/27/18), 241 So.3d 305; **State v. Wright**, 45,980 (La. App. 2 Cir. 1/26/11), 57 So.3d 465, 471, writ denied, 2011-0421 (La. 9/2/11), 68 So.3d 520.

In **Haley**, the defendant therein was convicted of possession of pornography involving juveniles and similarly asserted the testimony of the State's expert, Dr. Margaret Springer, failed to meet the reliability standard set forth in **Daubert**. Dr. Springer stated she analyzed the photographs at issue in that case, in part, by applying the "Tanner stages[,]" which she explained are sexual maturity scales widely recognized as a tool for determining normal growth patterns in children and adolescents. Dr. Springer went into great depth describing the five levels of Tanner stages in female development, with the first stage ending at the beginning of breast development and visible signs of puberty, which is considered Tanner II. She explained that growth rates vary based on nutrition, social considerations, and ethnicity, but in the United States, female adolescents reach Tanner II between the ages of nine to thirteen. According to Dr. Springer, Tanner III covers basically ages thirteen to fourteen, and Tanner IV is the last stage before maturity, usually marked by the beginning of menstruation and the outer signs of puberty, as the body becomes ready for childbearing, denoting Tanner V, the mature female stage. **Haley**, 222 So.3d at 165-166.

The appellate court found the trial court did not commit reversible error in concluding Dr. Springer's expert testimony met the reliability standard for admissibility. The court noted Dr. Springer was admitted as an expert; therefore, it was permissible for her to give an opinion based on her own knowledge and experience. She described the Tanner stages as an "aid" devised by accumulated statistics in child development. The court further noted, in accordance with La. R.S. 14:81.1(G), the jury was permitted to make determinations based on its own

knowledge of the general development of sexual organs and body growth whether a juvenile under the age of seventeen is depicted in the images in question in that case. Finally, the court noted Dr. Springer did not base her opinion solely on the Tanner stages. **Haley**, 222 So.3d at 166.

In **Wright**, the defendant was convicted of twenty-three counts of possession of child pornography. Therein, Dr. Ann Springer, an expert in pediatric and child abuse medicine, testified that certain evidentiary photographs depicted children under the age of seventeen engaged in various sexual situations with adult males. Dr. Springer stated the photographs at issue were chosen from a much larger collection of photographs because they most conclusively showed juveniles under the age of seventeen. She based her conclusions concerning the age of the victims on the physical developmental characteristics of each child, such as whether the victim had breast development, pubic hair, or the ability to maintain an erection. She explained to the jury exactly which physical developmental characteristic(s) led her to the conclusion that each exhibit depicted a child under the age of seventeen. Considering, in part, Dr. Springer's testimony, the appellate court found the evidence was sufficient to support the convictions in that case. **Wright**, 57 So.3d at 471.

Herein, according to Special Agent Lucia's testimony, in determining the age of an individual, she considers the presence or absence of the following anatomical features: (1) breast development; (2) pubic hair; and (3) general bone structure or size difference among children and adults. Special Agent Lucia testified that older females especially tend to develop hips and widen around the breast area while a child would be "straight … [a]ll the way down." She noted her assessment was never or rarely based on only one factor and is instead based on the totality of factors, including facial features.

In determining that twelve of the videos possessed by the defendant involved subjects that were under the age of thirteen, Special Agent Lucia specifically noted that she classified the subjects as prepubescent children based on the lack of hips, no breast development, an areola area light in color, no pubic hair, and indicative facial features. She observed that one of the children appeared to have just gotten her permanent teeth and further observed the height difference between her shoulders and the floor to assess her overall size. The child likewise did not have any breast development. Special Agent Lucia further compared the size of an adult hand to a child's buttock, noting that it was completely encompassed by the adult hand. She candidly testified that in two of the videos retrieved from the defendant's phone she could not make an opinion as to the age of the subject, resulting in the "age difficult" classifications. She confirmed that in such questionable cases, charges are not pursued.

As detailed above, we find the testimony at issue was highly probative and find no abuse of discretion regarding the admission of the testimony. Furthermore, the jury was instructed as to their duty regarding the assessment of the evidence and to determine the proper weight to be given to expert testimony. The trial court specifically informed the jurors they had the right to accept or reject expert testimony. Whether the subjects depicted in the videos were younger than thirteen was a fact to be determined by the jury, and expert testimony is but one factor that may be utilized in making that determination. See La. R.S. 14:81.1(G). Here, the members of the jury had the opportunity to view the images and make their own determination regarding the evidence. In accordance with the foregoing, we find assignment of error number one is without merit.

## ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE

In assignment of error number two, the defendant argues the concurrent, forty-year sentences imposed herein, the statutory maximum on each count, is

11

excessive. In assignment of error number three, the defendant argues the trial court erred in failing to observe the statutorily required twenty-four-hour delay, prior to the imposition of the sentences.

Herein, the defendant filed motions for new trial and post-verdict judgment of acquittal, and the trial court denied them both on the day of sentencing, just prior to the imposition of the sentences. However, La. Code Crim. P. art. 873 provides, in pertinent part, "[i]f a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled." There is no indication in the record that the defendant waived the delay in this case. Thus, the trial court erred by sentencing the defendant immediately after ruling on the motion for new trial.

In **State v. Augustine**, 555 So.2d 1331, 1333-34 (La. 1990), the Louisiana Supreme Court noted that a failure to observe the twenty-four-hour delay provided in Article 873 may be considered harmless error where the defendant could not show that he suffered prejudice from the violation, and sentencing is not raised on appeal. See also **State v. Stafford**, 2020-0299 (La. App. 1 Cir. 2/22/21), 321 So.3d 965, 969. Where, however, a defendant does challenge his sentence, failure to follow the required twenty-four-hour delay renders a sentence void. **Augustine**, 555 So.2d at 1333 (citing **State v. Mistich**, 186 La. 174, 171 So. 841 (1937) and **State v. George**, 218 La. 18, 48 So.2d 265 (1950), cert. denied, 340 U.S. 949, 71 S.Ct. 528, 95 L.Ed. 684 (1951)).

In this case, through a claim of excessiveness, the defendant is challenging his sentences, thus meeting the requirements of **Augustine** for remand. **State v. Pursell**, 2004-1775 (La. App. 1 Cir. 5/6/05), 915 So.2d 871, 874. Additionally, as stated, the record does not contain an expressed or even an implicit waiver of the

sentencing delay.[3] While defense counsel did not contest or object to moving on to sentencing after the rulings on the motions, in **State v. Kisack**, 2016-0797 (La. 10/18/17), 236 So.3d 1201, 1205 (*per curiam*), cert. denied, 583 U.S. 1160, 138 S.Ct. 1175, 200 L.Ed.2d 322 (2018), the Louisiana Supreme Court found the defense counsel's participation in the sentencing hearing was insufficient to constitute a waiver of the delay required by Article 873. As further observed by the court, "[a]n implicit waiver ... runs afoul of the plain language of Art. 873 that requires that the waiver be expressly made." *Id.* Therefore, given the circumstances present, we must vacate the defendant's sentences and remand the case to the trial court for resentencing. See **Augustine**, 555 So.2d at 1334-1335; **State v. Denham**, 2001-0400 (La. App. 1 Cir. 12/28/01), 804 So.2d 929, 932, writ denied, 2002-0393 (La. 1/24/03), 836 So.2d 37.

Because we find that **Augustine** requires us to vacate the defendant's sentences, we pretermit consideration of the merits of the defendant's excessiveness claim raised in assignment of error number two. See **State v. Thompson**, 2010-2254 (La. App. 1 Cir. 6/10/11), 2011 WL 3423798, *1 (unpublished). However, we note that when resentencing the defendant, the trial court should advise him of the time limitations provided by La. Code Crim. P. art. 930.8(A) for applying for post-conviction relief. *Id.* The sentences are hereby vacated, and the matter is remanded to the trial court for resentencing in accordance with this opinion.

**CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.**

---

[3] While the minutes indicate the defendant waived the delay of sentencing, there is no indication of this in the transcript and the State concedes on appeal that the trial court proceeded to sentencing without a twenty-four-hour delay as mandated by Article 873. Where there is a conflict between the transcript and the minutes, the transcript prevails. **State v. Lynch**, 441 So.2d 732, 734 (La. 1983); **State v. Lee**, 2023-0079 (La. App. 1 Cir. 6/2/23), 2023 WL 3861763, *1 n.1 (unpublished).