TERRI F. LOVE, Judge.
| ^Defendant Demontre Smith (“Mr. Smith”) seeks review of the trial court’s November 18, 2015 ruling that denied his motion to exclude digital evidence for lack of authentication. Finding the State failed to present any evidence at all to authenticate the purported social media evidence it wishes to1 introduce at trial, we find the trial court abused its discretion in ruling the evidence admissible. Therefore, we grant Mr. Smith’s writ application, lift the stay, and vacate the trial court’s'November 18, 2015 ruling. Additionally, we remand the matter to the trial court for an eviden-tiary hearing — outside the presence of the, jury — in order for the State to1 present evidence pursuant to La. C.E. art. 901 to demonstrate the authenticity of the social media posts and for the trial, court to rule on their admissibility at trial.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mr. Smith is charged with one count of aggravated assault with a firearm, in violation of La. R;S. 14:37.4. In June 2015, Mr. Smith was arrested pursuant to a warrant that alleged he threatened the victim with a gun on June 21, 2015, and that Mr. Smith later sent the victim threatening messages.
In October 2015, a preliminary hearing was held wherein New Orleans |2Police Officer Kezia Harvey (“Officer Harvey”), the State’s only witness, testified as to the events culminating in Mr. Smith’s arrest. Officer Harvey stated she was dispatched in June 2015 between two and three in the' morning to investigate an aggravated assault in'the 7200 block of Yorktown. Officer Harvey stated she spoke with the victim and was informed that the victim and a group of friends were going to a nearby pool. On their way, they encountered Mr. Smith, a former acquaintance of the victim, who approached and brandished a gun, pointed it at the victim, and pulled the trigger. The firearm failed to fire, and Mr. Smith fled in an unknown direction. The victim told Officer Harvey that Mr. Smith did not say anything during the encounter. Officer Harvey also testified that the victim showed her his cell phone and the alleged threats he received from Mr. Smith through “different text messages.” The State introduced two pages that were print outs of the alleged threatening “text messages”[1] which Officer Har *838 .vey stated she initially viewed on the victim’s cell phone.[2] The social media posts introduced included a purported photograph of Mr. Smith holding a revolver and comments allegedly made by Mr. Smith. Notably, there is no testimony as to how the images on the phone shown to Officer Harvey were copied or reproduced onto paper.[3]
In response to the State’s question regarding the content of the “text messages,” Officer Harvey stated:
One of the photos Mr. Smith (sic) had was a picture of Mr. Smith holding a firearm and then there was another ver: bal text message to the victim stating that his mom better have insurance; basically saying | athat she needs to get life insurance because his days . Because he was saying that he was going to, you know, do something; you know, cause harm to him; you know, saying that his mom needs to get life insurance oh him. There’s [sic] copies of the text messages.
During Officer Harvey’s direct examination, the trial court intervened to ask how she learned, other than the victim’s statement to her, that the “text, message” came from Mr. Smith. Officer Harvey responded, “Because that was what the victim stated and showed.” The trial court then asked’ whether the victim showed her a picture of Mr. Smith holding a weapon, and the officer replied in the affirmative. Thereafter, Officer Harvey identified Mr. Smith in the courtroom, and testified that he was the same individual as in the picture the victim showed her. On cross-examination, however, the officer admitted that prior to the victim showing her the picture she had ’never met Mr. Smith. Therefore, she conceded that she had no way of independently verifying' that the picture was in fact of Mr, Smith.
The State also asked Officer Harvey whether the communication the victim showed her came from Instagram.[4] Officer Harvey could not say where the “text messages” and photos came from or from what social media service the messages were allegedly sent. Nevertheless, the State asked:
Q. So whatever form of communication that is, whether it’s Instagram or text messages—
A. uh-huh.
Q — next to the words written by the defendant,'is there a picture?
A. The picture — I can’t see, I can’t seé — it’s kind of fuzzy, so I don’t know
[[Image here]]
Q. Do you recognize the document I gave you?
■I 4 * '* *
A. I recognize the photo with the firearm that the gentleman had and I also *839 recognize the text that he sent to the victim.
On cross-examination, defense counsel also questioned Officer Harvey about the contents of the alleged communication and what attempts she made to authenticate the alleged social media posts. With respect to the alleged phbto of Mr. Smith holding a firearm, Officer Harvey stated she could only make out the words: gallery, Flipgram, DD8, and “He want to play.” Officer Harvey further testified that she could not make out any other portions of the social media post. The officer stated: “Not on this paper, no, ma’am, I cannot see; it’s very, it’s very faint ... You can see certain things but not whole statements.” ■ The officer testified that no dates or names appeared anywhere on either document or what the messages themselves said in the script at the bottom of the page. Referring to a second screenshot, containing several comments that the State alleges Mr. Smith made, the following occurred on cross-examination:
Q. Okay. If you could look for me to the second page.
A. (Appears to locate page.)
Q. This one you have a much' bigger font so wé can see some statements here. You said before that there was a threatening message.
A. Yes.
Q. And you said before that it was coming from Demontre?
A. Yes. .
Q. But officer, you would also agree with me that the name “Demontre” never appears on this page, correct?
A. That is correct.
Q. And the statements that appears at the top is “DD3 mentioned you in a comment. Just cocked me a new one”—
MS. COUSINS:
Excuse me, Your Honor, for profanity.
BY MS. COUSINS:
Q. “Just cocked me a new one, bitch. I’m done talking. See you tomorrow. Better be ready. Broke ass mama better have insurance.’.’ Is that the top comment?
A. - Yes.
Q, And that again comes from DEE D3?
Is A. Yes.
Q. But again the word, the name “De-montre” never appears on this?
A. That is correct.
Thereafter, defense counsel questioned Officer Harvey about what.-attempts she made to independently verify who sent the messages'. The officer testified that she did not speak with anyone ahout verifying the IP address behind the supposed posts or subpoenaing the social networking service to find out who owned this DD3 account. Additionally, even though Officer Harvey testified that a photo contained in the print out matched Mr. Smith, the officer could not verify that the photo was not “photo-shopped” or edited. Likewise, Officer Harvey testified that no dates appeared on either document.[5] Following argument by both sides, the trial court denied Mr. Smith’s motion to suppress statements and found probable cause.
Mr. Smith subsequently.filed a motion to exclude digital evidence for lack of authentication in November 2015, A contra *840 dictory hearing was held, and despite the State producing no evidence to authenticate the images were from a legitimate social networking service or that Mr. Smith was the creator of the posts, the trial court denied Mr. Smith’s motion to exclude the digital evidence. The trial court concluded that Mr. Smith “would be able to adequately deal with [the authenticity of the digital evidence] on cross-examination.” Mr. Smith timely filed his application for supervisory review from the trial court’s denial of his motion to ^exclude the digital evidence, and the State filed its opposition. This Court ordered a stay of the proceedings in the trial court and set the matter for oral argument.

STANDARD OF REVIEW

The trial court, as part of its ga-tekeeping function, made a factual determination regarding the authenticity of the social media posts at issue. “[D]etermina-tions regarding the relevancy and admissibility should not be overturned - absent a clear abuse of discretion.” State v. Mosby, 595 So.2d 1135, 1139 (La.1992). On supervisory review, the issue before us is whether the trial court abused its discretion by ruling admissible print outs of posts from social media allegedly created by Mr. Smith.

AUTHENTICATION OF EVIDENCE

Authentication of evidence is required in order for evidence to be admissible at trial. La. C.E. art. 901 states that “authentication” is a “condition precedent to admissibility” that is “satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.” La. C.E. art. 901(B) provides an illustrative, though not exhaustive, list of examples of authentication or identification that conforms with the requirements of the article. Generally, the standard applied by state and federal courts alike with respect to the authentication of a document is whether there is sufficient evidence from which a reasonable juror could find the proposed evidence is what the proponent claims it to be. State v. Lee, 01-2082, p. 9 (La.App. 4 Cir. 8/21/02), 826 So.2d 616, 624 (“[I]t is a fundamental law of evidence that an article or substance which is introduced as demonstrative evidence, or to which a witness is asked to testify, must be sufficiently identified as the one involved in the occurrence in question.” (quoting State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045)); U.S. v. Gagliardi 506 F.3d 140, 151 (2d Cir.2007); Sublet v. State, 442 Md. 632, 113 A.3d 695 (2015).
Authentication of electronic messaging, however, is an issue which Louisiana courts have dispensed limited guidance, particularly as it relates to social media. Therefore, understanding the historical context which state and federal courts in other jurisdictions have approached the authentication of social media communication is instructive. In 2011, the Maryland Supreme Court addressed the admissibility of a sereenshot of a MySpace page and the authentication of screenshots of messages allegedly sent over social media. Griffin v. State, 419 Md. 343, 19 A.3d 415, 423-24 (2011). The Griffin court found that merely identifying the date of birth and a face in a photograph on a social media web site that purports to reflect the creator and author of the post is insufficient. The Griffin court held that because electronically-stored information is easily susceptible to abuse and manipulation it required “greater scrutiny of ‘the foundational requirements’ than letters or other paper records, to bolster reliability.” Id. at 423.
*841 By contrast, the Texas appellate court took a somewhat different ■ approach in Tienda v. State, 358 S.W.3d 633 (Tex.Crim. App.2012). The Tienda court equated the authentication of social media posts with that of the authentication of email, text messages or internet chat room communication. Id. at 639. In those instances, the electronic evidence was admissible “when found to be sufficiently linked to the author so as to justify submission to the jury for its ultimate determination of authenticity.” Id. Thus, the Tienda court held that “[t]he preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic.” Id. at 638. | «Applying the “reasonable juror” standard, the Tienda court distinguished itself from Griffin. It noted that though Griffin recognized at least three methods by which social media posts may be authenticated, the Griffin court did not use any of those methods. Id. at 647. Griffin also did not enunciate a standard for authenticating evidence. Nevertheless, the Tienda court considered the circumstantial evidence including the distinctive characteristics of the posts themselves as well as the contents of the messages. Id. at 642-45. The Tienda court found that the social media posts in its case presented “far more circumstantial indicia of authenticity” than Griffin. Id. at 647.
Subsequently, in-the 2015 Sublet decision, the Maryland Supreme Court culled the various state and federal cases- since Griffin,- to set forth Maryland’s standard for authenticating evidence derived from online social networking services. The Maryland Supreme Court gave thorough consideration to the -challenges of authentication and admissibility of evidence from social media including communications between its users through online posts.
In Sublet, the Maryland high court consolidated -three cases to address the authentication of Twitter and Facebook messages. Id., 113 A.3d at 697. The Sublet court recognized that authentication of digital evidence, particularly social media, poses significant problems “because anyone can create a fictitious account and masquerade under, another person’s name or can gain access to another’s account by obtaining the user’s username and password.” Id. at 713 (quoting Griffin, 19 A.3d at 421). The court held that despite the relatively low burden of proof for authentication of evidence, the mere fact that digital evidence exists on the internet and social media does not, by itself, lead to the conclusion that it was created by the defendant or on his behalf. Id. at 713-17 (relying on U.S. v. Vayner, 769 F.3d 125, 132 (2d Cir.2014)).[6] Ultimately, the Maryland court concluded that the appropriate standard is whether there is “proof from which a reasonable juror could find that the evidence is what the proponent claims it to be.” Id. at 722.
The court recognized three common and acceptable ways of authenticating social media postings: 1
The first and most obvious method for authentication, we said, would be to ask the purported creator if she indeed created the profile and also if she added the posting in question. The second approach we discussed was to search the computer of the person who allegedly *842 created the profile and posting and examine the computer’s internet history and hard drive to determine whether that computer was used to originate the social networking profile and posting in question. • The third of the non-exhaustive means of authentication we suggested was to obtain information directly from the social networking website, which would link together the profile and the entry to the person, or persons, who had created them.
Id. at 713 (internal quotations omitted). Further, the Sublet court examined several different factual scenarios where the possibility of information uniquely within the knowledge of the authors or other identifying characteristics, could also serve to authenticate a post.

REASONABLE JUROR STANDARD

Like Maryland’s Rule 5-901, the language of La. C.E. art. 901 tracks the language of the Federal Rule of Evidence 901. Thus, we find the cited cases interpreting the federal rule instructive, bearing on our own application of Louisiana’s equivalent rule of evidence. The “reasonable juror” standard', as set forth in Sublet, is consistent with La. C.E. art. 901 and its application relative to [mother types of evidence. Accordingly, we find the proper inquiry is whether the proponent has “adduced sufficient evidence to support a finding that the proffered evidence is what it is claimed to be.” Sublet, 113 A.3d at 717 (quoting Vayner, 769 F.3d at 131). Sufficient proof will vary from case to case, and “[t]he ‘proof of authentication may.- be direct or circumstantial.’ ” Id. at 716 (quoting Vayner, 769 F.3d at 130). Consequently, the type and quantum of evidence will depend'on the context and the purpose of its introduction. Evidence, which is deemed sufficient to support a reasonable juror’s finding that the proposed evidence is what it is purports to be in one case, may be insufficient in another.
The State seeks to introduce the social media posts because their contents tend to corroborate the victim’s statement in this case. Finding the “reasonable juror” standard applies to the authentication of social' media evidence, we must determine whether the State offered sufficient facts from which the jury could reasonably find the evidence authentic. If so, the trial court did not abuse its discretion in ruling the social media posts admissible at trial.
Officer Harvey testified at the preliminary hearing that the victim showed her “different text messages” he received from Mr. Smith. Officer Harvey stated that.she initially viewed the messages on the vie-’ tim’s cell phone. At the preliminary hearing, the investigating officer was unable to identify from which social media platform the messages were allegedly sent. Further, no evidence or testimony was offered as to whether Mr. Smith created the account and/or profile on the social media platform or whether he had ever accessed the platform. Likewise, there is no evidence of whether, assuming he created the online account, Mr. Smilh allowed others access using his password or any 'unique qualities regarding the messages themselves from which one may assert Mr. Smith sent the I ^messages.
In fact, at the contradictory hearing on Mr. Smith’s motion to exclude, the State presented no evidence at all to au-’ thenticate the purported social media posts it seeks to introduce, Instead, it alleges that it intends to - authenticate the social media posts at .trial. As the proponent of the evidence, the initial burden rests with the State. State v. Charles, 617 So.2d 895, 896 (La.1993). Thus, because Mr. Smith’s motion to exclude' sufficiently alleged an absence of evidence to support the authenticity- of the social..media posts, it was *843 incumbent on the State to present at the contradictory hearing such evidence that a reasonable juror may conclude that the evidence is what it purports to be.
In its supplemental brief, the State advances a new argument, not -raised in the trial court, attempting to explain its failure to carry its burden under La. C.E. art. 901 at the contradictory hearing.[7] - The State contends that because the victim is protected under the Victim’s Right Act, Mr. Smith is not entitled to question the victim, nor is the State required to call as a witness the victim at a pre-trial-hearing to testify as to the authenticity of the social media posts. Its argument suggests, despite admitting otherwise, that the victim’s testimony is the only method for authenticating the social media posts. The issue before this Court is not whether the State can properly authenticate the social' media evidence at a later date. The issue ■ is whether the trial court, in its gatekeeping function, abused its discretion by haruling the evidence admissible without requiring the State to submit evidence to meet the low threshold test necessary to authenticate the social media posts.
Notwithstanding the State’s failure to submit evidence demonstrating the ‘authenticity of the social media evidence, the trial court found the posts admissible and denied Mr. Srhith’s motion to exclude. Moreover, we reject the State’s suggestion that tBe trial court deferred its ruling or provisionally ■ admitted the evidence until such time that the State could present facts at trial to carry its burden. Nothing in the trial court judgment or the transcript indicates the trial court’s intention to defer ruling' on the admissibility issue. Similarly, there is no evidence that the trial court placed any conditions on the admissibility of the social media evidence. The trial court simply denied Mr. Smith’s motion and ruled the evidence admissible at trial.
■ The State also argues that all-the cases Mr. Smith'-cites relative to authentication of social media evidence involve authentication at trial. Notably, however, the State refrains from suggesting.that a determination of authenticity prior to -trial is prohibited. The State’s assertion implies that authentication, should occur - at trial when the potential damage of revealing the State’s case and the burden on its witnesses, including the victim, is less of. an issue. However, - the trial court has already ruled — albeit in error — that the evidence is admissible. As discussed, the trial court did not defer or.place any conditions on its ruling. Thus, if we were to adhere to the State’s contention and affirm the trial court’s ruling in its present .posture, it vvould amount to a tacit rejection of established Louisiana law, recognizing, au? thentication as a . “condition precedent” to the admissibility of evidence. . La. C.E. art. 901. .
Despite the' State’s 'own admission that authentication is a “non^burdensome” threshold requirement and one that it is able to meet through various methods, we *844 find the State failed to offer any evidence in opposition to Mr. Smith’s motion to exclude for lack of authenticity. Therefore, the trial court abused its discretion when it ruled the evidence admissible where the State failed to offer sufficient evidence to authenticate the social media posts.
Nevertheless, the State’s argument in opposition to Mr. Smith’s writ application raises procedural concerns that warrant discussion. La. C.E. art. 104(A) provides in pertinent part, “[preliminary questions concerning ... the admissibility of evidence shall be determined by the court, subject to the provisions of Paragraph B,” which states:
Subject to other provisions of this Code, when the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.
(emphasis added). According to the provisions of La, C.E. art. 104, preliminary questions-regarding the admissibility of evidence shall be determined by the court, unless the relevancy of the evidence depends on the resolution of a question of fact; in which case, the issue of relevancy goes to the fact finder. Traditionally, when this framework is applied to an evi-dentiary challenge for lack of authentication, trial courts have exercised their ga-tekeeping function and determined for the jury whether the facts reasonably support the authenticity of the proffered evidence. However, if both parties supply equally plausible facts from which a reasonable jury may or may not conclude that the evidence is what the proponent purports it to be, the evidence is provisionally admissible. Authenticity of the evidence, in that instance, depends on the resolution of the disputed question of fact. Thus, the determination of the authenticity of the proffered evidence is left 114for the trier of fact, wherein it decides whether to accept or reject the proffered evidence.
We note La. C.E. art. 104 also to highlight an important distinction between the trial court’s gatekeeping function and the jury’s factfinding role. The basis of the trial court’s denial of Mr. Smith’s motion was that “[he] would be able to adequately deal with [issues of authentication] on cross-examination.” First, the trial court’s ruling overlooks that authentication is a condition precedent to admissibility. Therefore, issues of authentication must be resolved before the proposed evidence may be introduced at trial. .Second, the trial court’s reasoning misses an important distinction between authentication and reliability. Authentication renders evidence of the social media posts admissible at trial Whether the social media posts are reliable evidence is a question for the jury. Similarly, whether the opposing party can attack the reliability of the evidence at trial is not part of the trial court’s preliminary inquiry under La. C.E. arts. 901. See also La. C.E. art. 104. Therefore, the trial court’s determination is only whether the proponent, in this case the State, “has adduced sufficient evidence to support a finding that the proffered evidence is what it is claimed to be.” Sublet, 113 A.3d at 717 (quoting Vayner, 769 F.3d at 131). If the trial court deems the evidence admissible, “the opposing party ‘remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the weight of the evidence — not to its admissibility.’” Id. (quoting Vayner, 769 F.3d at 131 (quoting another source)(emphasis in the original)).
We find the trial court erred in ruling the evidence admissible and remand the *845 matter for a hearing — outside the presence of the jury — in order for the State to | ^present evidence to authenticate the social media posts. On remand, the trial court shall decide whether the State has supplied evidence (direct or circumstantial) that is sufficient to support a reasonable jury conclusion that the evidence it seeks to introduce at trial is what the State purports it to be. If the State successfully carries its burden, then the trial court must find the evidence admissible. In so ruling, we are mindful to emphasize that Mr. Smith bears no burden at the motion stage and that the burden rests solely with the proponent of the evidence to establish the social media posts’ authenticity under La. C.E. art. 901.
Therefore, we find the social media posts the State seeks to introduce at trial were not properly authenticated as the State presented no evidence in order to carry its burden pursuant to La. C.E. art, 901 at the hearing on Mr. Smith’s motion to exclude. Thus, the trial court abused its discretion and failed to exercise its gatekeeping function by ruling the evidence admissible. Accordingly, we grant Mr. Smith’s writ application, lift the stay, and vacate the trial court’s November 18, 2015 ruling. Furthermore, we remand the matter for a hearing — outside the presence of the jury — in order for the State to present evidence pursuant to La. C.E. art. 901 to demonstrate the authenticity of the social media posts and for the trial court to. rule on their admissibility at trial.
WRIT GRANTED; VACATED; REMANDED; STAY LIFTED.

. Although Officer Harvey referred to Mr. Smith’s alleged communication with the vie- *838 tim as "text messages," review of the testimony in its entirety as well as review of the exhibits introduced at the hearing reveals that the virtual correspondence occurred over an unidentified social media platform, rather than mobile text messaging,

, ¡Defense counsel raised no objection to their introduction for motion purposes only,

. Defense notes that the evidence which the State intends to introduce at trial are exactly as they appear in the record before this Court, and argues that the State does “not have color copies, nor do they have copies that are clearer or less blurry.”

.We take judicial notice that Instagram is an online mobile social networking service, that .allows its users to share photos and videos, privately or publicly, with friends and other users on the mobile application or on other social networking platforms, like Facebook or Twitter. Instagram users are also able to leave comments on each other’s photo or video posts, offering a means of virtual communication across its platform.

. On re-direct examination, Officer Harvey testified that although the documents did not indicate specific times, one of the print óuts reflects that next to one of the messages it stated "nineteen minutes.” The State asked the officer if it was her belief that the notation. indicated that the victim received that particular message nineteen minutes before' he showed it to her. Officer Harvey replied in the affirmative.

. Vayner called into doubt the Maryland Supreme Court’s earlier decision in Griffin v. State, which held that that electronically-stored information required "greater scrutiny of ‘the foundational requirements' than letters or other paper records, to bolster reliability.” Griffin, 419 Md. 343, 19 A.3d 415, 423 (2011). In the subsequent Sublet decision, the Maryland high court embraced the reasonable juror standard set forth in Vayner.

. Generally, this Court will not consider issues which were hot raised in the pleadings or arguments before the trial court or raised for the first time on appeal, State v. Fleming, 11-1126, p. 3-4 (La.App. 4 Cir. 5/30/12), 95 So.3d 1125, 1128; State v. Green, 10-0454, p. 22 (La.App. 4 Cir. 3/16/11), 62 So.3d 229, 242 (citing Rule 1-3, Uniform Rulés of Louisiana Courts of Appeal). Still, we note that the Statels latest argument .wholly ignores the recognizably low bar. for authentication of evidence and its own assertion that it is able meet its burden in a number of ways. See Gagliardi, 506 F.3d 140, 151 (2d Cir.2007) (“[t]he bar for authentication of evidence is not particularly high .., [t]he proponent need not rule out all possibilities , inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.”).