# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 23-226


**LEVI AUSTIN MALONE**

**VERSUS**

**BRIANNE LEIALOHA ROBERTS**



**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 260856
HONORABLE PATRICIA EVANS KOCH, DISTRICT JUDGE

**********

## GUY E. BRADBERRY
## JUDGE

**********

Court composed of Candyce G. Perret, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.

**Fitzgerald, J., concurs without assigning reasons.**


## REVERSED IN PART; AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.

**Becky B. LeBlanc**
**4615 Parliament Drive, Suite 202**
**Alexandria, La 71303**
**(318) 767-2227**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
   **Levi Austin Malone**

**Carolyn O. Hines**
**Jones Law Partners**
**1330 Jackson Street**
**Alexandria, LA 71301**
**(318) 442-1515**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Brianne Leialoha Roberts**

**BRADBERRY, Judge.**

Brianne Roberts[1] appeals a trial court judgment which granted domiciliary custody to Levi Malone of their minor daughter, Aurora Malone. Brianne asserts several issues on appeal concerning evidentiary matters, the decision to award domiciliary custody to the father, and the failure to hold him in contempt of court for failing to pay child support. For the following reasons, we reverse the judgment in part, affirm the judgment in part, and remand with instructions.

## FACTS

Aurora Malone, born on June 25, 2016, is the daughter of Levi Malone and Brianne Roberts. The parents were never married. According to testimony at the hearing on the present manner, Brianne moved to California sometime between Thanksgiving and Christmas 2017, where she and Aurora lived with her parents until she could move into a place on her own. On January 19, 2018, Levi filed a petition seeking joint custody and the establishment of custodial periods. A consent judgment was entered on April 30, 2018, naming Brianne as the primary domiciliary parent. A visitation schedule was set up for both parties. The visitation schedule in the judgment made no provisions for visitation past December 2020. The judgment also ordered Levi to pay child support in the amount of $150 a month.

On April 14, 2022, Levi filed a petition to modify custody seeking joint custody and asking that he be designated the domiciliary parent. Brianne answered the petition, agreeing that joint custody should be maintained but asked that she continue as domiciliary parent. She also asked that Levi be held in contempt of

---

[1] At the time of trial, Brianne had married Tod Thomas. However, for purposes of this appeal, we will continue to refer to her as Brianne Roberts.

court for failing to pay child support. The parents disagreed on whether Aurora would attend school in California or Louisiana since she was reaching school age.

Five days prior to trial, Brianne filed a motion in limine to exclude evidence on the basis that **Levi** neither disclosed nor provided her **the** evidence **that [or which]** she requested on August 1, 2022.

A trial was held on August 22 and 24, 2022, at which time testimony and evidence was introduced concerning the current living situations of the parties. At the time of trial, Levi was living with his wife of two years, Olivia, and their three-year-old son, Huxley. Aurora was also living with them. Levi was working as an on-site services department dispatch coordinator for Manchac Technologies. He worked from nine am to five pm, five days a week. Olivia worked in the accounting department at the Diocese of Alexandria. Testimony also revealed that Levi lived in four different locations in the past five years.

In 2017, Brianne moved to California because her family lives there. After initially living with her parents, Brianne testified that she moved to San Clemente, California in August 2019. While there, she worked at Big Helyn's Saloon from July 2021 to June 2022 as a manager and bartender. Her house was located right next to the bar. She quit working at Helyn's because Aurora was supposed to return home to California following an extended stay in Louisiana. Brianne testified that she allowed Aurora to stay in Louisiana for the 2021-2022 school year with the understanding that she would come back to California. Aurora attended Buckeye Elementary in Louisiana. Previously, Aurora attended San Clemente Montessori School in California.

In November 2021, Brianne moved to base housing at Camp Pendleton after marrying Tod Thomas. Tod is a radio operator for the United States Marine Corps.

Brianne and Tod got married at Helyn's because a friend she worked with was an ordained minister and they thought it would be fun to get married there.

Prior to Brianne moving to California, she lived in Louisiana and finished high school here. Her mother, Jennifer Roberts, also lived in Louisiana near Levi and continues to have a home here, even though she testified she spends most of her time in California now. Testimony offered at trial indicated that Jennifer's home in Fresno, California is three hours away from Brianne. She runs a disaster recovery business with her husband and children. Brianne testified that she has worked for the company for seven years as an administrative assistant in addition to handling safety documents and has flexible time. She has health and dental benefits through this job. Brianne also receives a stipend to help with housing and childcare.

Levi testified that in Louisiana he has help with the children from both his and Olivia's parents as well as Brianne's parents when they are in Louisiana. Everyone agreed that Brianne's mother was a big help in facilitating visitation between the parents by helping with transportation of Aurora while in Louisiana and between California and Louisiana.

At trial, Levi admitted that he started smoking marijuana when he was fifteen years old and then began experimenting with medications when he was eighteen or nineteen years old. At twenty years old, he became addicted to Oxycodone and Heroin. Levi was in a rehabilitation facility three times. The first time was from November to December 2016. Levi then went back to rehabilitation from April 2017 to November 2017. He relapsed in 2019. This time he brought Aurora with him to purchase drugs. He once again went to rehabilitation and testified that the last time he used drugs was July 15, 2019. During his stints in

rehabilitation, Brianne would bring Aurora to visit him. Levi admitted that he has stolen money from Brianne and her family to purchase drugs. He also admitted that he occasionally drinks at a social function.

Levi's father, Doug, also testified at trial. He stated he sees Levi four to five times a week and finds that he is stable and focuses on things he needs to focus on now. Doug and his wife help watch the kids.

While Brianne testified that she does not use drugs, she admitted that she has been arrested three times for DWI, in 2014, 2019, and 2021. She stated that she started drinking consistently after she gave birth to Aurora and drinks alcohol maybe once a week.

Prior to trial, the parties agreed to submit to a drug test. Evidence in the record indicates that both parties' drug tests were negative. We also note that neither party's spouse testified at trial.

After trial, the trial court issued extensive reasons for judgment finding a material change in circumstances and naming Levi as domiciliary parent. The trial court implemented a physical custody schedule based on the Rapides Parish School year. Brianne then filed the present appeal asserting several assignments of error.

**TRIAL COURT'S FAILURE TO RULE ON CERTAIN MATTERS**

Brianne argues the trial court committed error in failing to rule on her motion for contempt regarding child support and her motion in limine regarding the exclusion of evidence. At the start of trial, the attorneys inquired whether the trial court was going to consider the preliminary matters of the motion in limine and motion for contempt. The trial court stated that it would consider each piece of evidence as it comes up. Brianne claims the trial court's decision to rule on each piece of evidence as it was presented during the hearing resulted in prejudice

to her. Brianne specifically refers to social media documents and Snapchat location evidence.

## Motion in Limine

In ruling on evidentiary matters, including motions in limine, a trial court is afforded broad discretion and its determination is not to be disturbed on appeal absent a clear abuse of that discretion. *George v. Progressive Waste Sols. of La, Inc.*, 22-1068 (La. 12/9/22), 355 So.3d 583. In reviewing a trial court's ruling on a motion of limine, an appellate court must decide whether the trial court abused its discretion. *Simpson v. UV Ins. Risk Retention Grp., Inc.*, 19-625 (La.App. 3 Cir. 9/30/20), 304 So.3d 1002.

In *Hagar v. State, ex rel. Department of Transportation and Development*, 06-1557 (La.App. 1 Cir. 1/16/08), 978 So.2d 454, *writs denied*, 08-347, 08-385 (La. 4/18/08), 978 So.2d 349, the first circuit found no abuse of discretion when the trial court opted to defer consideration of a motion in limine to exclude post-construction standards until trial on the merits. The court found that it was permissible since it was a "bench trial." *Id*. at 466 n. 7.

Louisiana Code of Evidence Article 901 requires that evidence be authenticated before it is admissible at trial. Article 901(A) specifically provides that "authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." As noted by the court in *State v. Smith*, 15-1359 (La.App. 4 Cir. 4/20/16), 192 So.3d 836, there is little guidance in Louisiana courts, especially with regards to the admission of social media evidence.

During Levi's testimony, his attorney tried to offer Facebook posts posted by Brianne, which were objected to by Brianne's attorney. The trial court

5

expressed concern with the hearsay aspect of the messages and would not allow them in, but stated that if Brianne could identify the posts as her own posts, then it would allow them in. The trial court did allow Levi to testify about posts that he recognized as pictures of Brianne. Levi's attorney also sought to introduce Snapchats by Brianne indicating Brianne's location, and again, the trial court would only allow the information in if Brianne herself could authenticate it.

During Brianne's testimony, she agreed that all the Facebook posts were hers, but that there were some memes that she just copied onto Facebook that were not actually made by her. The court recognized that the memes were not Brianne's actual thoughts but allowed them to be introduced since Brianne agreed that she did post them. Brianne admitted that she was a bartender and shared the memes about alcohol because she thought other people would find them funny.

The court also allowed introduction of evidence of Brianne's Snapchat locations on certain days when Brianne had custody of Aurora. Brianne recognized that Snapchat indicated the correct geographical vicinity of her location. She stated some of the locations included several businesses in the same area that she often frequented, that she often picked up or dropped people off at those locations, or that she could have been getting food at the Jack in the Box. Her house was right next to the bar where she worked, Helyn's, so she would often walk to work. Brianne testified about other Snapchat locations, each time offering an explanation as to why she was there and whether Aurora was with her or not.

We find no abuse of discretion in the trial court's admission of the evidence during the trial as it was presented, allowing for testimony on its authenticity to be presented as Brianne testified. Brianne testified extensively about the Facebook posts and Snapchat locations. She agreed that the posts were hers and that the

Snapchat locations indicated that she was in that vicinity. Brianne explained in detail the content of the posts and what she was doing at each Snapchat location.

## Motion for Contempt

Brianne argues the trial court erred in failing to rule on her motion for contempt filed as part of her answer and reconventional demand. Brianne argues that Levi failed to consistently make child support payments and that he was in arrearages of approximately $2,800. Brianne paid for school and daycare, with no help from Levi. She stated that he refused to sign a settlement check for injuries Aurora received in a car accident until she agreed to give him credit for past-due child support. She asked that he be held in contempt for failure to pay child support. Brianne did not seek child support arrearages.

No ruling on the motion for contempt was made prior to trial, with the trial court explaining at the same time regarding the motion in limine that it would rule on the issues as it came up. The written judgment is silent as to the motion for contempt, and there is no mention of it in the written reasons.

A judgment's silence as to an issue constitutes a rejection of that issue. *DeSoto v. DeSoto*, 04-1248 (La.App. 3 Cir. 2/2/05), 893 So.2d 175; *Int'l Fid. Ins. Co. v. Durham*, 18-298 (La.App. 3 Cir. 11/14/18), 261 So.3d 30, *writ denied*, 18-2049 (La. 2/11/19), 263 So.3d 898. "Willful disobedience of any lawful judgment" is a constructive contempt of court. La.Code Civ.P. art. 224(2).

> A contempt of court proceeding is either criminal or civil, which is determined by what the court primarily seeks to accomplish by imposing sentence. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627 (1966). In a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order, whereas in a civil contempt proceeding, the court seeks to force a person into compliance with a court order. State in the *Interest of R.J.S.*, 493 So.2d 1199, 1202 & n. 7 (La.1986) (citing *Shillitani*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)).

7

*Billiot v. Billiot*, 01-1298, p. 4 (La. 1/25/02), 805 So.2d 1170, 1173.

In the present case, Brianne seeks to hold Levi responsible for willfully disobeying the court's April 30, 2018 judgment.

> Criminal contempt is a crime, and the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal proceeding against conviction of a crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the contempt charge. [*State in re*] *R.J.S.*, 493 So.2d [1199] at 1202 [La.1986]. On appellate review of criminal contempt, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the contempt charge was proved beyond a reasonable doubt. *Id.*

> Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. *Id*. at 1203. The purpose of charging and convicting a defendant for criminal contempt is vindication of the public interest by punishment of contemptuous conduct. *Id*. (citing R. Perkins, Criminal Law 533 (1969)). Therefore, in order to constitute willful disobedience necessary for criminal contempt, the act or refusal to act must be done with an intent to defy the authority of the court. *Id*. (citing E. Dangel, Contempt § 171 (1939)).

*Id.* at 1174.

"To find a person guilty of constructive contempt, it is necessary to find the contemnor violated the order of the court intentionally, knowingly, and purposely, without justifiable excuse." *Hanna v. Hanna*, 53,210, p. 9 (La.App. 2 Cir. 11/20/19), 285 So.3d 116, 121.

At trial, Levi agreed that he was behind in his child support payments, admitting his actions were irresponsible. He testified that he was behind by approximately $600. One of the text messages introduced between the parties indicated that he had not paid child support in a year and a half. There was testimony that he may have received credit for some of the missed payments for

8

half of Aurora's injury settlement, which at trial he agreed the settlement should be for the benefit of his child.

The record is clear that Levi failed to make a substantial amount of child support payments. We find the trial court committed manifest error in not finding Levi in contempt of court. The record is clear that Levi willfully violated the court's order to pay $150 a month in child support. "The authority to punish for contempt of court falls within the inherent power of a court to aid in the exercise of its jurisdiction and to enforce its lawful orders." *In re Merritt*, 391 So.2d 440, 442 (La.1980). We, therefore, will remand to the trial court to determine the appropriate punishment under La.R.S. 13:4611(d)(i) for violation of its judgment.

## ADMISSION OF EVIDENCE

In addition to the admission of Facebook and Snapchat evidence which we discussed above, Brianne claims the trial court erred in admitting Newport Beach criminal records and custody calendars, specifically objecting to the comments section of Levi's custody calendar.

The erroneous admission of evidence cannot be error unless a substantial right of the party is affected. La.Code Evid. art. 103. The party alleging prejudice by an evidentiary error has the burden of establishing that the error had a substantial effect on the outcome of the case when compared to the entire record. *Maturin v. Bayou Teche Water Works, Inc.*, 20-257 (La.App. 3 Cir. 12/16/20), 310 So.3d 627, *writ denied*, 21-68 (La. 3/2/21), 311 So.3d 1061. If the effect is not substantial, reversal is not warranted. *Id.* A trial court's ruling on evidentiary matters will not be disturbed absent an abuse of discretion. *Id.*

The criminal record was located by Levi from an online source which indicated Brianne was arrested in February 2021 for DWI and entered a plea of not

guilty. Brianne's attorney objected on the basis that the document had not been certified. The trial court allowed the record into evidence, noting that mistakes can be placed online and that the record only indicated an arrest and not a conviction. Brianne admitted that she had three arrests for DWIs. She agreed that the most recent arrest was in February 2021. While she would not testify about the facts surrounding the 2021 arrest, the fact it occurred was admitted. Therefore, even if the document was not admitted into evidence, Brianne's testimony established the same facts. We find any potential error in the admission of this record had no substantial effect on the case, since Brianne admitted she was arrested. We find no abuse of discretion in the trial court's ruling.

Both parties admitted custody calendars for the years 2020, 2021, and 2022 into evidence and testified extensively about the custody periods indicated by the calendars. Regarding the statements on the custody calendars submitted by Levi, the trial court required the blacking out of any hearsay statements. A review of the calendars admitted into evidence indicates that the statements were blacked out. We also find no abuse of discretion in the trial court's admission of Levi's custody calendars into evidence.

**RELOCATION STATUTE**

Brianne also claims that the trial court erred in failing to consider the relocation statute, La.R.S. 9:355.1-355.19. She argues that California is Aurora's principal residence. Levi argues that Aurora's principal residence is Louisiana citing La.R.S. 355.1(1)(c).

Testimony at trial revealed that Brianne moved to California between Thanksgiving and Christmas 2017 and lived with her parents until she got an apartment. As a result of her move to California, Levi filed the original petition for

10

custody on January 19, 2018. Consent judgment was rendered April 30, 2018. The judgment did not designate a principal residence of the child. La.R.S. 355.1(1)(a).

Louisiana Revised Statutes 9:355.1(1)(c)(emphasis added) provides for a child's principal residence "[i]n the absence of a court order or an express agreement, the location, if any, at which the **child has spent the majority of time during the prior six months**." In *Mathes v. Faucheux*, 17-329 (La.App. 4 Cir. 8/9/17), 226 So.3d 503, the trial court found a relocation to Houston had occurred when a child moved back to his birthplace of Houston after previously spending a majority of time in Louisiana and a previous consent agreement designated Louisiana as the home state.

Testimony at trial established that Aurora lived with Levi, his wife Olivia, and their three-year-old son Huxley from May 15, 2021 to July 2022. Levi, as the party who is seeking domiciliary custody, is not seeking to relocate Aurora to another state. Under these circumstances, we find that the relocation statute is not applicable because Aurora's principal residence under La.R.S. 9:355(1)(c) is Louisiana.

## MATERIAL CHANGE OF CIRCUMSTANCES AND BEST INTEREST OF THE CHILD

Brianne argues that the trial court erred in finding a material change of circumstances and that it is in the best interest of Aurora for Levi to be named domiciliary parent. She specifically argues the trial court erred in considering highly prejudicial and inadmissible evidence, which we previously discussed. Brianne also claims that the trial court did not fully consider Levi's lack of adequate preventive measures to maintain sobriety, where he admitted his past

issues with drug abuse. Brianne states the trial court failed to consider her efforts to foster a healthy relationship between Levi and his daughter and Levi's repeated failure to pay child support.

When there has been a consent judgment of custody, the party seeking modification of custody bears a two-step burden of proof. *Tracie F. v. Francisco D.*, 15-1812 (La. 3/15/16), 188 So.3d 231; *Harvey v. Harper*, 22-744 (La.App. 3 Cir. 3/1/23), 358 So.3d 988. The party seeking modification of the consent judgment must prove that: (1) there has been a material change of circumstances since the consent judgment; and (2) the proposed modification is in the best interest of the child as set forth in La.Civ. Code art. 134. *Id.*

> A material change in circumstance is a change that "negatively impacts the welfare of the child." *LeBlanc v. LeBlanc*, 06-1052, p. 9 (La.App. 3 Cir. 2/14/07), 951 So.2d 500, 507. A trial court's determination of whether a material change in circumstances has occurred is a factual finding. *See Kyle v. Kier*, 17-134 (La.App. 3 Cir. 11/15/17), 233 So.3d 708; *See also Bonnecarrere v. Bonnecarrere*, 09-1647 (La.App. 1 Cir. 4/14/10), 37 So.3d 1038, *writ denied*, 10-1639 (La. 8/11/10), 42 So.3d 381. The trial court's factual conclusions are given substantial deference by appellate courts in child custody matters. *Steinebach v. Steinebach*, 07-38 (La.App. 3 Cir. 5/2/07), 957 So.2d 291. Unless there is a legal error, "[t]he determinations made by the trial judge as to custody [ ] will not be set aside unless it clearly appears [from the record] that there has been an abuse of discretion." *Nugent v. Nugent*, 232 So.2d 521, 523 (La.App. 3 Cir. 1970); *See also Mulkey v. Mulkey*, 12-2709 (La. 5/7/13), 118 So.3d 357. "The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts." *McCorvey v. McCorvey*, 05-174, p. 4 (La.App. 3 Cir. 11/2/05), 916 So.2d 357, 362, *writ denied*, 05-2577 (La. 5/5/06), 927 So.2d 300.

*Vidrine v. Vidrine*, 17-722, pp. 7-8 (La.App. 3 Cir. 5/2/18), 245 So.3d 1266, 1273 (alterations in original).

In extensive well-written reasons for judgment, the trial court recognized the jurisprudence and thoroughly discussed each factor to be considered in analyzing the best interest of the child under La.Civ. Code art. 134. The court concluded:

> After weighing and examining all the factors, this Court finds that it is in the best interest of Aurora to remain in Rapides Parish with her father, Levi Malone, and that Levi Malone be named the domiciliary parent. The Court accepts and adopts the expert testimony of Ms. Coleman who had the opportunity to meet both of the parents and minor child as well as the opportunity to review all the evidence submitted to the Court. This change is necessary to provide the child with the stability of a community, a school, a family that is grounded in the everydayness of life and not caught up in what appears to be drama in the life of Brianne Roberts Thomas. The Court certainly understands the occasional posting of something when out with friends or silliness of an occasion but what Robert's life in California reflects is an individual who is more focused on fun and friends than what a young developing child needs. What has been most telling during this trial was the lack of photographs or stories of Roberts with her child. There were no sweet stories of adventures to the many amazing locations in California, other than taco Tuesday at Molly Bloom's Irish Pub or going to Dave and Buster's. No indications of favorite books or past times shared between a mother and child. What was evident was the access to an I-Pad or Facetime for the minor child to contact or play games. Roberts reported she was taking friends to or from bars rather than being home with her child when the visit with Aurora was just a few days both here and in California. Aurora is a child about to enter 1st grade and much of her life has been caught up in the shuffle back and forth between the states. Roberts' descriptions of the events that appeared to be occurring when she posted on Facebook, Instagram or on Snapchat were lacking in honesty.
>
> Levi Malone has some work to perform in his life and household as well. As mentioned, Malone must step forward and communicate with Roberts. The parties are directed to locate a counselor that could see them both to improve their co-parenting skills. Malone also needs to work with Olivia on appropriately identifying her role as step-mother. In addition to these relationships, Malone must seek out help to adequately support long-term sobriety. The consumption of alcohol is a slippery slope when an individual has an addiction issue. Locally we have multiple providers who can guide him on this life time [sic] journey.

Lauren Gay Coleman, an attorney and board-certified clinical supervisor, testified at trial. She met with both parents and Aurora. Ms. Coleman testified that

13

both parents were good parents, but she opined that Levi should be the primary custodial parent because Aurora was in Louisiana for the past school year and there is extended family here. She met with Levi an additional time based on concerns about his past addiction, but still thought he should be the primary custodial parent. Ms. Coleman had concerns about Brianne because Aurora told her that she was with a babysitter quite a bit and she was also concerned about the people coming and going from Brianne's household. She did have concerns about Levi's wife, Olivia, communicating directly with Brianne about Aurora instead of Levi, and stated that Levi needed to communicate with Brianne.

Steven Cook, an assistant district attorney and licensed addiction counselor, also testified. He evaluated Brianne for substance abuse. He had concerns about her history of arrests for DWI and her insight into drinking and driving. In response to the court's question about a mother going out to clubs or bars when the child is in for a short visitation, Mr. Cook stated that a mother is not performing her function as a parent because she is more interested in drinking alcohol than staying with her child during her visitation times. He did not sense that Brianne's level of drinking had increased over time, but his diagnostic impression was alcohol use disorder, mild and in extended remission.

Mr. Cook further testified that opioid addiction is hard to quit. He testified that drinking alcohol as a recovering drug addict can lead to decreased resistance to taking drugs. Levi agreed that he does drink alcohol on occasion.

There is no doubt that both parents are good parents and both parents have substance abuse issues. It appears that Levi has handled his drug addiction, but we agree with the trial court that he should seek help to support long-term sobriety. As recognized by the trial court, co-parenting efforts became challenging in the last

few years due to new marriages and constant reliance on Brianne's mother to communicate between the parents. The trial court also recognized the time each parent had the child: (1) 2020 - Levi 197 days, Brianne 163 days, some of which were in Louisiana; (2) 2021 - Levi 216 days, Brianne 118 days, many of which were spent with Brianne's mother or other family members; and (3) 2022 – Levi 207 days, Brianne 12 days, as of July 10, 2022.

The trial court heard two days of testimony and reviewed each factor of La.Civ.Code art. 134 in determining the best interest of Aurora. After reviewing the record and reasons for judgment, we find no abuse of discretion in the trial court's determination that a material change of circumstances occurred and that it is in the best interest of Aurora that Levi be designated the primary custodial parent.

For the above reasons, we reverse the judgment of the trial court which denied Brianne's motion for contempt and find that Levi is in contempt for failing to pay child support. We remand the case to the trial court to determine the appropriate punishment pursuant to La.R.S. 13:4611(1)(d)(i). In all other respects, we affirm the judgment of the trial court. Costs of this appeal are to be shared equally between Levi Malone and Brianne Roberts.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.**